# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JEFFREY BANNISTER,

       Plaintiff,

vs.                                                                    No. CIV 07-620 JB/CEG

CORONADO FINANCE, INC.,
MONIKA BANNISTER, and
PATRICIA BRADLEY, All
individually,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendant Coronado Finance, Inc.'s Motion to Dismiss, filed July 17, 2007 (Doc. 7). The Court held a hearing on December 18, 2007. The primary issues are: (i) whether the Court should dismiss Plaintiff Jeffrey Bannister's Complaint on the basis of the <u>Rooker/Feldman</u> doctrine; (ii) whether the Court should dismiss Jeffrey Bannister's Complaint because he fails to state a claim which has as an element that  Defendant Coronado Finance, Inc. is a state actor; and (iii) whether the Court should decline to exercise supplemental jurisdiction over Jeffrey Bannister's Count III for intentional infliction of emotional distress under state law if it has dismissed all federal claims. Although the <u>Rooker/Feldman</u> doctrine does not bar Jeffrey Bannister's claims, because Jeffrey Bannister has not demonstrated that Coronado Finance's conduct constitutes state action, the Court will dismiss Jeffrey Bannister's federal claims against Coronado Finance for its alleged violations of Jeffrey Bannister's constitutional rights. The Court will also dismiss, without prejudice, Jeffrey Bannister's state-law claims for intentional infliction of emotional distress for failure to allege all the essential elements.

## FACTUAL BACKGROUND

Defendant Coronado Finance, Inc. is a New Mexico corporation with its principal place of business in Doña Ana County, New Mexico.  See Memorandum in Support of Motion to Dismiss or Alternatively for a More Definite Statement, filed July 16, 2007 (Doc. 6)("Bradley Memo."); Exhibit A, Complaint to Recover on Promissory Note in Coronado Finance v. Monika Bannister, No. CV-2006-1347 in Third Judicial District Court (filed August 21, 2006) ¶ 1, at 1 ("Third Judicial District Complaint").  Defendant Monika Bannister is an individual whose last known principal place of residence is Doña Ana County.  See Complaint for Damages and Injunctive Relief ¶ 5, at 2, filed  June 28, 2007 (Doc. 1)("Complaint"); Summons in a Civil Action for Monika Bannister at 2205 Garrison Road, Las Cruces, New Mexico 88007 (dated July 16, 2007), filed July 16, 2007 (Doc. 9)(indicating that "Defendant Bannister has left the Las Cruces area and cannot be found at this time.").  Monika Bannister is Jeffrey Bannister's sister.  See Memorandum in Support of Motion to Dismiss or Alternatively for a More Definite Statement at 1, filed July 16, 2007 (Doc. 6).

On or about February 16, 2006, Monika Bannister executed and delivered a promissory note payable to Coronado Finance in the original principal amount of $6,050.07, plus interest at the rate of 26.60 percent per annum.  See Third Judicial District Complaint ¶ 3, at 1.  By the spring of 2006, Monika Bannister was in default of payment on the loan.  See id. ¶ 4, at 1.

On August 21, 2006, Coronado Finance filed a verified Complaint to Recover on Promissory Note in the Third Judicial District Court, County of Doña Ana, State of New Mexico against Monika Bannister.  See Third Judicial District Complaint at 1.  Defendant Patricia A. Bradley of Miller Stratvert, P.A. in Las Cruces filed the action on behalf of Coronado Finance.  See id. at 2.  Maria

Anketell, the custodian and manager of the loan for Coronado Finance, verified the complaint.  See id. at 3.  The case was assigned to the Honorable Jerald A. Valentine, District Court Judge, Third Judicial District of New Mexico.  See Bradley Memo., Exhibit B, Default Judgment in Coronado Finance v. Monika Bannister, No. CV-2006-1347 in Third Judicial District Court (filed October 31, 2006) at 2 ("Default Judgment").

The Complaint in Coronado Finance, Inc. v. Monika Bannister alleged that the balance remaining due and unpaid was $6,689.35, with interest thereon from April 25, 2006 at the rate of 26.60 percent per annum until paid.  See Third Judicial District Complaint ¶ 4, at 1.  Coronado Finance further alleged that, pursuant to the terms of the promissory note, it was entitled to reasonable attorney's fees and costs.  See id. ¶ 5, at 1-2.  For relief, Coronado Finance sought a judgment in the amount of $6,689.35 plus interest thereon at the rate of 26.60 per cent per year from and after April 25, 2006 until paid, plus reasonable attorney's fees and the costs of its state court action.  See id. at 2.

Monika Bannister failed to enter an appearance or file an answer with the state court.  Coronado Finance filed an Application for Judgment by Default against Monika Bannister.  See Default Judgment ¶ 2, at 1.  A Certificate as to the State of the Record was also filed with the Application.  See id.

Judge Valentine reviewed Coronado Finance's pleading, and found that he had jurisdiction over the parties and subject matter.  See id. ¶ 1, at 1.  He found that Coronado Finance's Application for Judgment by Default was well taken and should be granted.  See id. ¶ 3, at 1.  On October 31, 2007, Judge Valentine ordered that Coronado Finance should take default judgment over and against Monika Bannister as follows: (i) on the note, which was the subject of the complaint, in the sum of

$6,666.02 as of October 16, 2006, upon which amount interest continues to accrue from October 17, 2006, at the per annum rate of 26.60% per annum ($4.46 per diem); (ii) attorneys fees in the amount of $1,128.45; (iii) costs in the amount of $126.98; (iv) pre-judgment interest at the rate of 26.60% per annum ($4.46 per diem) through the date of entry of that judgment; and (v) post-judgment interest on all sums awarded in the default judgment from date of entry of the judgment at the rate of 39.90% ($7.29 per diem). See id. ¶¶ 1-5, at 1-2. Thus, on October 31, 2006, Coronado Finance obtained a money judgment against Monika Bannister in Coronado Finance v. Monika Bannister, No. CV-2006-1347 in Third Judicial District Court, in the total amount of $7,983.89, together with interest thereon at 39.90% ($7.29 per diem) from November 1, 2006. See Bradley Memo, Exhibit B, Transcript of Judgment (entered November 8, 2006).

On November 13, 2006, Coronado Finance filed a transcript of judgment in the office of the Doña Ana County Clerk, and the transcript was recorded at Book 762, pages 1409-1410. See Bradley Memo., Exhibit C, Transcript of Judgment in Coronado Finance, Inc. v. Monika Bannister, filed November 8, 2006 (Third Judicial District Court in Doña Ana County, State of New Mexico) at 2. The transcript of judgment had the CV-2006-1347's caption on it, Judge Valentine's name, and Ms. Bradley's name, address, telephone number, and law firm as the attorney for the judgment creditor. See id. at 1. The transcript of judgment listed the judgment creditor as Coronado Finance of Las Cruces, the judgment debtor as Monika Bannister of Las Cruces, and the date of judgment as October 31, 2006. See id. The transcript described the nature of the action as "Complaint to Recover on Promissory Note," and set forth the amount of judgment: (i) damages of $6,666.02; (ii) costs of $126.98; (iii) fees of $1,128.45; (iv) pre-judgment interest of $62.44; (iv) total of $7,983.89; and (v) a rate of pre-judgment interest of 26.60% ($4.46 per diem) and of post-judgment interest of

39.90% ($7.29 per diem).  See id.  Under the section "How Satisfied and Remarks," the transcript states: "Pre-Judgment Interest: From 10/18/06 to 10/31/06: 14 days at $4.46 per diem=$62.44."  Id. A deputy to Nadine Sanchez, the Court Administrator of the Third Judicial District Court, certified the transcript of the judgment.  See id. at 2.

Monika Bannister failed to satisfy the judgment lien that Coronado Finance held.  After Judge Valentine entered a default judgment against Monika Bannister, Coronado Finance filed a Complaint to Foreclose Judgment Liens against Monika Bannister and Chris Frost.  See Bradley Memo., Exhibit C, Complaint to Foreclose Judgment Lien in Coronado Finance, Inc. v. Monika Bannister, et al., No. CV-2006-2218 (Third Judicial District Court, County of Doña Ana, State of New Mexico), filed December 21, 2006 ("Judgment Lien").  Frost is an individual residing in Las Cruces in Doña Ana County.  See id. ¶ 3, at 1.  Anketell verified the complaint.  See id. at 4.  Ms. Bradley signed the complaint as counsel.  See id. at 3.  The case was assigned to the Honorable Robert E. Robles, District Court Judge.

Pursuant to New Mexico Statutes Annotated Section 39-4-13 N.M.S.A. 1978, Coronado Finance sought in Coronado Finance, Inc. v. Monika Bannister et al., No. CV-2006-2218, to foreclose its judgment lien against some of Monika Bannister's property:

> A tract of land situate southeast of Radium Springs, Dona Ana County, New Mexico, in Section 14, T.21S., R.1W., N.M.P.M. of the U.S.G.L.O. Surveys, being part of Lot 25, Fort Selden Subdivision, filed May 20, 1964, in Book 9 page 27 of Plat Records of Dona Ana County, New Mexico; aka 860 Outpost Lane; aka 827 Fort Selden Road; aka Parcel ID#03-00347; aka map code 3-002-123-018-150.

Judgment Lien ¶ 6, at 2.  Coronado Finance alleged that, as of December 13, 2006, the unpaid balance of the judgment lien was $8,297.36 with interest thereon at 39.90% per annum from December 7, 2006, at the rate of $7.29 per day.  See id. ¶ 7, at 2.  Coronado Finance noted that Frost

might claim an interest in the subject real property by virtue of a Mortgage and Note Securing Bail Bond dated July 10, 2006, and recorded in the real estate records of Doña Ana County on July 11, 2006, in Book 727, pages 1040-1043.  See id. ¶ 8, at 2.  Coronado Finance further represented that it was informed and believed that the indebtedness secured by such Mortgage may have been paid, and that Frost's interest in the subject real property was therefore inferior to that of Coronado Finance's interest.  See id.

Coronado Finance asserted in Coronado Finance, Inc. v. Monika Bannister et al., No. CV-2006-2218, that it was entitled to a Decree of Foreclosure, foreclosing the interest of all defendants in and to the property subsequent to Coronado Finance's lien and barring those defendants, their successors, heirs, and assigns from any claim or right to the property.  See id. ¶ 9, at 2.  Coronado Finance asked the Court to appoint a Special Master to conduct a foreclosure sale, with the proceeds from the sale of the property being applied, first, to the costs and expenses of foreclosure, including the attorney's fees, and second, to all sums owing to Coronado Finance pursuant to the judgment lien; and the balance, if any, pursuant to further order of the court.  See id. ¶ 10, at 2.  Coronado Finance also alleged that, in the event of sale, the redemption period shall be nine months.  See id. ¶ 11, at 2.  Coronado Finance further requested that, following sale, the Court should issue a Writ of Assistance, if necessary, directing the sheriff to use reasonable force to obtain entry to the property and deliver possession of the property to the purchaser.  See id. ¶ 12, at 2-3.  In its prayer for relief, Coronado Finance requested a judgment as follows: (i) that Coronado Finance be awarded judgment against Monika Bannister, and any and all other persons claiming an interest in the property adverse to Coronado Finance; (ii) that Coronado Finance's judgment lien be foreclosed and its lien be declared the first and paramount lien on the property; that the remaining defendants and

all persons claiming under the defendants be barred and forever foreclosed of all rights, interest, or claims in and to the property; that the redemption period be nine months; and that a Special Master be appointed and the property sold according to the law and practice of the court; (iii) that the proceeds from the foreclosure sale be applied as Coronado Finance had requested; (iv) that Coronado Finance might become the purchaser and be permitted to bid in its judgment, or any portion thereof, in lieu of cash at the foreclosure sale; and (v) that the court, if necessary, issue a Writ of Assistance.  See id. ¶¶ 1-6, at 3.

Jeffrey Bannister and a third party to the state foreclosure action, filed a Motion to Intervene/to Dismiss Complaint to Foreclose Judgment Lien/and to Vacate Void Judgment.  See Bradley Memo., Exhibit D, Order Denying "Motion to Intervene/to Dismiss Complaint to Foreclose Judgment Lien/and to Vacate Void Judgment" filed by Non-Party Jeff Bannister in Coronado Finance, Inc. v. Bannister, No. CV-2006-2218 (Third Judicial District, Doña Ana County, State of New Mexico).  Jeffrey Bannister argued in state court, in his Motion to Intervene, that he did not personally contract with Coronado Finance, and that therefore its judgment lien against his sister in CV-2006-1347 "was obtained by fraud upon the Court and is null and void." Complaint, Exhibit 2, Motion to Intervene/to Dismiss Complaint to Foreclose Judgment Lien/and to Vacate Void Judgment, filed January 12, 2007 in Coronado Finance, Inc. v. Bannister, No. CV-2006-2218 (Third Judicial District, Doña Ana County, State of New Mexico).  According to the state court's records, Jeffrey Bannister did not show up for the hearing on his multiple motions in state court.  See Bradley Memo., Exhibit D, Order Denying "Motion to Intervene/to Dismiss Complaint to Foreclose Judgment Lien/and to Vacate Void Judgment" filed by Non-Party Jeff Bannister in Coronado Finance, Inc. v. Bannister, No. CV-2006-2218 (Third Judicial District, Doña Ana County, State of

New Mexico) at 1.

In its Order Denying Bannister's Motion to Intervene in <u>Coronado Finance, Inc. v. Monika Bannister et al.</u>, No. CV-2006-2218, Judge Robles noted that Jeffrey Bannister did not appear for the hearing on his motion, but that Judge Robles reviewed the motion, reviewed Coronado Finance's response, heard Ms. Bradley's representations, and was sufficiently advised to rule. <u>See id.</u> Judge Robles found that notice of the hearing had been provided to Jeffrey Bannister, that the relief requested by Jeffrey Bannister's motion was to a different judgment in a different case entered by a different judge, and that Jeffrey Bannister's motion was not appropriately before the court. <u>See id.</u> Judge Robles also found that the points raised in Coronado Finance's response were well taken. <u>See id.</u> Judge Robles then denied Bannister's Motion to Intervene/to Dismiss Complaint to Foreclose Judgment Lien/and to Vacate Voice Judgment. <u>See id.</u>

Jeffrey Bannister did not appeal the Order denying his Motion to Intervene, Dismiss Complaint, and to Vacate/Avoid Judgment. Judge Robles entered an Order Approving Special Master's Report of Sale and Confirming Sale. <u>See</u> Bradley Memo., Exhibit E, Order Approving Special Master's Report of Sale and Confirming Sale in <u>Coronado Finance, Inc. v. Bannister</u>, No. CV-2006-2218 (Third Judicial District, Doña Ana County, State of New Mexico). The Special Master presented his Report of Sale for ratification, confirmation, and approval, and for entry of an Order Approving Special Master's Report of Sale and Confirming Sale. <u>See id.</u> at 1.

Jeffrey Bannister took no other action in the state court foreclosure proceeding. The foreclosure action concluded on May 31, 2007, as evidenced by the Order Approving the Special Master's Report and Confirming Sale in <u>Coronado Finance, Inc. v. Bannister</u>, No. CV-2006-2218 (Third Judicial District, Doña Ana County, State of New Mexico). <u>See id.</u> No further action has

occurred to date.

## **PROCEDURAL BACKGROUND**

Jeffrey Bannister filed a three-count Complaint in federal court asking for $2.7 million, bringing the following claims: (i) a claim for violation of his equal-protection and due-process rights under the First, Fourth, Fifth, Sixth, Ninth, and Fourteenth Amendments of the United States Constitution, under 42 U.S.C. § 1983 (Count I); (ii) a claim for conspiracy under 42 U.S.C. § 1984 to steal his land (Count II), see Complaint at 2; and (iii) a claim for intentional infliction of emotional distress in relation to the equal protection of the law (Count III), see Complaint at 7. Jeffrey Bannister is proceeding pro se. See id. at 1. Jeffrey Bannister attached as exhibits: (i) an affidavit of Monika Bannister, see Complaint, Exhibit 1, Affidavit of Monika Bannister (executed June 17, 2007); (ii) a copy of his Motion to Intervene in the Third Judicial District Court in CV-2006-2218 entitled "Coronado Financing, Plaintiff, versus Monika Bannister, an individual, and Chris Frost, an individual, Defendants," see Complaint, Exhibit 2; and (iii) a letter from Ms. Bradley to Monika Bannister, dated June 11, 2007, asking Monika Bannister to vacate the property that Coronado Finance purchased at a special master's sale, see Complaint, Exhibit 3. Jeffrey Bannister filed his federal Complaint after the entry of the Order Approving the Special Master's Sale and after the state court denied Jeffrey Bannister's Motion to Dismiss the Complaint and to intervene in state court. See Complaint at 1.

Jeffrey Bannister asserts that jurisdiction is based upon the Truth In Lending Act, the Unfair and Deceptive Practices Act, 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1343 (civil rights). See Complaint ¶ 1, at 1-2. Jeffrey Bannister admits in his Complaint that the Bannister Trust owned the property at issue, that Monika Bannister forged a warranty deed with the name of

the beneficiary of the trust, and that his sister conveyed the property to her ownership.  <u>See</u> Complaint ¶ 11, at 4. Jeffrey Bannister contends that there was a conspiracy between the Defendants and state court Judge Valentine to deprive Jeffrey Bannister of his federally protected rights.  <u>See</u> <u>id.</u> ¶ B, at 5.  Jeffrey Bannister alleges that Ms. Bradley "compounded the fraud" with the pleadings she filed.  <u>See</u> <u>id.</u> ¶ 14, at 6 ("The Defendant Patricia Bradley compounded the fraud by claiming that 'all the material' allegations of Coronado Finance, Inc. Complaint were proven and true.").

Coronado Finance moves the Court, pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the pending litigation for failure to state a claim.  <u>See</u> Memorandum in Support of Coronado Finance's Motion to Dismiss at 2-9, 12-13, filed July 17, 2007 (Doc. 8)("Memo.").  Coronado Finance contends that Jeffrey Bannister has not stated a cause of action under 42 U.S.C. §§ 1983, 1984, and 1986, because there is no claim of state action by Coronado Finance.  <u>See</u> Memo. at 4.  Coronado Finance argues:

> There is no claim of protected speech to support Mr. Bannister's First Amendment Claim.  There are no claims of procedural or substantive deficiencies to support his due process claim.  There is no averment of any disparate treatment to support an equal protection theory.  A [F]ourth [A]mendment claim implies an unreasonable search and seizure and is inapplicable to the case at bar.  The Sixth Amendment involves the right to counsel in a criminal proceeding and is also inapplicable to the well plead[ed] facts in this suit.

Memo. at 4-5.  Coronado Finance contends that Jeffrey Bannister's Ninth Amendment pleadings fail to state a claim, because that Amendment "is not an independent source of individual rights; rather it provides a 'rule of construction' that [is applied] in certain cases."  <u>Id.</u> at 5 (quoting <u>Jenkins</u> <u>v. C.I.R.</u>, 483 F.3d 90, 92 (2d Cir. 2007)).  Coronado Finance also argues that Jeffrey Bannister's Complaint fails to state any facts to support a private cause of action under the Truth in Lending Act. <u>See</u> Memo. at 5.  Coronado Finance contends that, under the tests determining whether conduct by

-10-

an otherwise private party constitutes state action, its actions are not state action.  See id. at 5-9.
Coronado Finance argues, alternatively, that Jeffrey Bannister's Complaint should be dismissed on
the basis of the Rooker-Feldman doctrine.  See id. at 9-12.

Coronado Finance contends that Jeffrey Bannister fails to state an intentional infliction of
emotional distress claim in his Complaint, because he "fails to plead any facts that can create an
inference that: [(i)] the conduct of Coronado Finance, Inc. was extreme or outrageous; [(ii)] the
conduct of Coronado Finance, Inc. was intentional or in reckless disregard for Mr. Bannister; or that
[(iii)] Mr. Bannister suffered mental anguish."  Id. at 12.  Coronado Finance argues, in the
alternative, that the Court should decline to exercise supplemental jurisdiction over Jeffrey
Bannister's intentional infliction of emotional distress claim.  See id. at 13.

At the hearing, Coronado Finance contended that, although the outcome of the state cases
"might be draconian to Mr. Ban[n]ister, . . . that does not open the door to federal court."  Transcript
of Hearing (taken December 18, 2007)("Tr.") at 25:11-13 (Piazza).[1]  Coronado Finance asserted that
it "is simply not a state actor that can be amenable to civil rights claims."  Id. at 25:21-22 (Piazza).
Coronado Finance represented that the sale of the at-issue property was sold for approximately
$37,000.00. See id. at 30:16-18 (Piazza).  The debt was approximately $7,900.00.  See id. at 30:18-
21 (Piazza).

At the hearing, Mr. White, Patricia Bradley's counsel, indicated that he may file another
motion raising the state-action issue.  See id. at 4:21-22 (White), id. at 7:20-8:1 (White & Court),
id. at 19:11-12 (Court), id. at 32:1-8 (Court).  The Court explained that, if Mr. White filed a motion

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original,
unedited version.  Any final transcript may contain slightly different page and/or line numbers.

raising the state-action issue, it would be inclined to dismiss Jeffrey Bannister's federal claims, because none of the people who Jeffrey Bannister has sued are governmental entities.  See id. at 19:14-18 (Court). The Court further stated that, if it dismissed all of Jeffrey Bannister's federal claims, then it would be inclined to not exercise supplemental jurisdiction over the state-law claims in the case and dismiss Jeffrey Bannister's state law claims without prejudice.  See id. at 19:18-21 (Court).

Never at the hearing or in his briefing, did Jeffrey Bannister request leave to amend his Complaint.  Because Jeffrey Bannister had not responded to Coronado Finance's motion, and was proceeding pro se, the Court said it would not rule on Coronado Finance's motion until Jeffrey Bannister had an opportunity to respond.  See Tr. at 32:21-25 (Court).  The Court gave Jeffrey Bannister until January 7, 2008 to respond to Coronado Finance's motion.  See id. at 32:24-25 (Court).  Moreover, because Jeffrey Bannister indicated that he had not read Coronado Finance's motion, see id. at 23:1-14 (Bannister & Court), the Court asked Mr. White, counsel for Patricia Bradley, to copy Coronado Finance's motion and make it available for Jeffrey Bannister to pick up at Mr. White's office.  See id. at 31:8-16 (Court & White).

On January 16, 2008, Coronado Finance filed its Notice of Completion of Briefing.  See Doc. 25.  Coronado Finance noted that the Court gave Jeffrey Bannister an extension of time to file his response through January 7, 2008.  See id. at 1.  Jeffrey Bannister did not submit a response.  See id.  Coronado Finance requests "[c]onsistent with the [Court's] oral statements during the course of the hearing, respectfully . . . that the Court enter an Order dismissing this matter without prejudice to Mr. Bannister's rights with respect to any state court submissions."  Id.  Patricia Bradley has not, through her counsel Mr. White, filed any other motions after the hearing.

-12-

## STANDARDS FOR DECIDING A MOTION TO DISMISS

In considering a motion to dismiss a complaint for failure to state a claim under rule 12(b)(6), a court must accept as true all factual allegations in the complaint and must draw all reasonable inferences in the plaintiff's favor.  See Hall v. Bellmon, 935 F.2d 1106, 1109 (10th Cir. 1991).  The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his claim.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982).  A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (internal citation omitted).

 "[T]he Supreme Court recently . . . prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir.2007)(quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1967, 1969). "The Court explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1974.)(alterations omitted).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of

-13-

mustering factual support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177.

The sufficiency of a complaint is a question of law, and when considering a motion to dismiss, the court must assume as true all well-pleaded facts, drawing all reasonable inferences in favor of the plaintiff. See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir. 1991). As a general rule, "a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss." Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007). Indeed, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b)(6). The decision to consider supplemental materials outside of the pleadings is within the district court's discretion. See Prager v. LaFaver, 180 F.3d 1185, 1189 (10th Cir. 1999).

Finally, in the context of a rule 12(b)(6) motion to dismiss where a plaintiff appears pro se, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." Johnson v. Johnson, 466 F.3d 1213, 1214 (10th Cir. 2006). The United States Court of Appeals for the Tenth Circuit has explained that "dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." Oxendine v. Kaplan, 241 F.3d 1272, 1275 (10th Cir. 2001)(citing Perkins v. Kan. Dep't of Corr., 165 F.3d 803, 806 (10th Cir. 1999)). While a pro se litigant's pleadings are held to less stringent standards, they must nevertheless comply with the same procedural rules as other litigants. See Barnes v. United States, 173 Fed. Appx. 695, 697 (10th Cir. 2006)(citing Ogden v. San Juan

County, 32 F.3d 452, 455 (10th Cir. 1994); Green v. Dorrell, 969 F.2d 915, 917 (10th Cir. 1992)).

It is not the district court's function to assume the role of advocate for the pro se litigant.  See

Bergman v. LaCouture, 218 Fed. Appx. 749, 750 (10th Cir. 2007).

"[A] dismissal under Rule 12(b)(6) for failure to state a claim is generally with prejudice."

Steele v. Federal Bureau of Prisons, 355 F.3d 1204, 1212 (10th Cir. 2003)(citing Sheldon v.

Vermonty, 269 F.3d 1202, 1207 (10th Cir.2001)), abrogated on other grounds, Jones v. Bock, 127

S.Ct. 910 (2007).  A dismissal with prejudice "say[s] only that the claim cannot be refiled" in the

court that dismissed the claim.  Styskal v. Weld County Bd. of County Com'rs, 365 F.3d 855, 859

(10th Cir. 2004)(citing Steele v. Federal Bureau of Prisons, 355 F.3d at 1215 (Hartz, J., concurring)).

Thus, a dismissal with prejudice by a federal district court in the District of Colorado "does not

necessarily mean anything more than that Plaintiff cannot refile her claim in the United States

District Court for the District of Colorado."  Styskal v. Weld County Bd. of County Com'rs, 365

F.3d at 859. Whether a plaintiff is barred from filing in state court "is a matter of claim-preclusion

law that is not determined solely by how the federal court dismissal is styled."  Id. The Tenth Circuit

explained:

> For example, if the federal court's ruling is based on the substance of the claim (what
> has often been termed an "adjudication on the merits," see Semtek, 531 U.S. at
> 501-05, 121 S.Ct. 1021 (but holding that this is not the meaning of the phrase in
> Fed.R.Civ.P. 41(b))), the doctrine of claim preclusion would ordinarily prevent
> further proceedings on the claim in a later state action. But if the federal court's
> dismissal is based on a procedural ground, the federal ruling is unlikely to have any
> preclusive effect in state court, even though the dismissal may bar the plaintiff from
> returning to federal court. See Steele, 355 F.3d at 1215 (Hartz, J., concurring).

Id. at 859 n.1.

## LAW REGARDING STATE ACTION AND CIVIL-RIGHTS CLAIMS

"As a matter of substantive constitutional law the state-action requirement reflects judicial

recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments." Lugar v. Edmondson Oil Co.,457 U.S. 922, 936 (1982).   To state a cause of action under 42 U.S.C. §§ 1983 and 1986 for alleged constitutional violations, the challenged conduct must constitute state action.  See Lugar v. Edmondson Oil Co., 457 U.S. at 935; Johnson v. Rodrigues (Orozco), 293 F.3d 1196, 1202 (10th Cir. 2002).  A plaintiff is required to show that: (i) he or she has been deprived of a right protected by the Constitution or laws of the United States; and (ii) that the putative state actor deprived him or her of the constitutional right while acting under color of any statute.  See Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 156 (1978).

    The Supreme Court of the United States has articulated four different tests for courts to use in determining whether conduct by an otherwise private party is state action: (i) the private-function test; (ii) the nexus test; (iii) the joint-action test; and (iv) the symbiotic-relationship test.  See Johnson v. Rodrigues (Orozco), 293 F.3d at 1202-1203 (reviewing the various tests); Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1447 (10th Cir. 1995)(noting that "[a]pplication of the state action doctrine has been characterized as one of the more slippery and troublesome areas of civil rights litigation.")(internal quotations omitted).

    Under the public-function test, a court determines whether a private party has exercised "powers traditionally exclusively reserved to the State." Jackson v. Metro. Edison Co., 419 U.S. 345, 352 (1974).  These powers include holding elections, performing necessary municipal functions, and running a nursing facility.  See Johnson v. Rodrigues (Orozco), 293 F.3d at 1203. Although the state may engage in administering loans and securing debts, it is not an area exclusively reserved to the state.  See Barrios-Velazquez v. Ass'n de Empleados del Estado Libre Associado, 84 F.3d 487, 494 (1st Cir. 1996)(holding that providing loans, insurance, and medical

serve do not constitute state action, because those services are not the exclusive province of the State).

A court determines under the nexus test whether there is a sufficiently close nexus between the state and the challenged conduct, such that the conduct "may be fairly treated as that of the state itself." Jackson v. Metro. Edison Co., 419 U.S. at 351.  A state may be held responsible for private conduct, only if the state "has exercised coercive power or has provided significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the state." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982). "Private use of state-sanctioned private remedies or procedures does not rise to the level of state action. . . . But when private parties make use of state procedures with the overt, significant assistance of state officials, state action may be found." Tulsa Professional Collection Servs, Inc. v. Pope, 485 U.S. 478, 486 (1988)(internal citations omitted).

State action exists under the joint-action test if the private party is a "willful participant in joint action with the State or its agents." Dennis v. Sparks, 449 U.S. 24, 27 (1980).  Courts look to "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." Gallagher v. Neil Young Freedom Concert, 49 F.3d at 1453.  "[I]f there is a substantial degree of cooperative action between state and private officials . . . or if there is overt and significant state participation, in carrying out the deprivation of the plaintiff's constitutional rights, state action is present." Id. at 1454 (internal quotations and citations omitted).

Under the symbiotic-relationship test, state action is present if the state "has so far insinuated itself into a position of interdependence" with a private party that "it must be recognized as a joint participant in the challenged activity." Burton v. Wilmington Parking Authority, 365 U.S. 715, 862 (1961). "[E]xtensive regulation, receipt of substantial state funds, and the performance of important

-17-

public functions do not necessarily establish the kind of symbiotic relationship between the [state] and a private [party] that is required for state action." Gallagher v. Neil Young Freedom Concert, 49 F.3d at 1451.

In Fries v. Helsper, 146 F.3d 452 (7th Cir. 1998), the plaintiff brought a § 1983 action alleging that various law firms and individuals conspired to obtain dismissal of his state court complaint without due process of law.  See id. at 452-53.  The plaintiff "included only . . . conclusory allegations that the defendants conspired with [the] Judge . . . and influenced his decisions."  Id. at 458.  Nevertheless "mere allegations of joint action or a conspiracy do not demonstrate that the defendants acted under color of state law and are not sufficient to survive a motion to dismiss."  Id. at 458.  In addition, the plaintiff was unclear in his complaint "how the defendants' conduct was connected to [the] Judge['s] . . . alleged failure to act on some of the motions and, as a result, qualified as state action."  Id.  The United States Court of Appeals for the Seventh Circuit held that the plaintiff failed to demonstrate that the defendants acted under color of law when "[n]othing in the complaint demonstrate[d] the existence of any joint action, concerted effort, or even a general understanding between [the] Judge . . . and the defendants."  Id.

In Shelley v. Kraemer, 334 U.S. 1 (1948), the Supreme Court noted: "That the action of state courts and of judicial officers in their official capacities is to be regarded as action of the State within the meaning of the Fourteenth Amendment, is a proposition which has long been established by decisions of this Court."  Id. at 14.  The Supreme Court held that the state courts' enforcement of racially restrictive covenant agreements was state action.  See id. at 13-14, 19.  The Supreme Court explained:

> These are not cases . . . in which the States have merely abstained from action, leaving private individuals free to impose such discriminations as they see fit.

> Rather, these are cases in which the States have made available to such individuals the full coercive power of government to deny to petitioners, on the grounds of race or color, the enjoyment of property rights in premises which petitioners are willing and financially able to acquire and which the grantors are willing to sell. The difference between judicial enforcement and nonenforcement of the restrictive covenants is the difference between . . . being denied rights of property available to other members of the community and being accorded full enjoyment of those rights on an equal footing.

Id. at 19.

### ROOKER-FELDMAN DOCTRINE

The Rooker-Feldman doctrine precludes federal district courts from exercising appellate jurisdiction over claims that state courts decide and over federal claims intertwined with prior state court judgments. See Mo's Express, LLC v. Sopkin, 441 F.3d 1229, 1233 (10th Cir. 2006). "An unsuccessful state litigant cannot challenge an adverse state judgment and circumvent the rule of Rooker-Feldman simply by bringing a constitutional claim under the civil rights statutes." Hunt v. Green, 376 F.Supp.2d 1043, 1051 (D.N.M. 2005)(Browning, J.).

The Rooker-Feldman doctrine is narrow, however. See Mo's Express, LLC v. Sopkin, 441 F.3d at 1234. The Rooker-Feldman doctrine is inapplicable against nonparties to the state-court judgments disputed in federal court. See id. at 1234 ("This Court has repeatedly held that the Rooker-Feldman doctrine 'should not be applied against non-parties' to the state-court judgment.'")(quoting Johnson v. Rodrigues (Orozco), 226 F.3d 103, 109 (10th Cir. 2000)). Where the parties in the federal litigation were not parties in the state litigation, were not bound by the state court's judgment, and are neither predecessors nor successors in interest to the parties involved in the state litigation, the Rooker-Feldman doctrine is inapplicable to those parties. See Mo's Express, LLC v. Sopkin, 441 F.3d at 1236. Because those parties have no connection to the state judgment, their action in federal court cannot be characterized as "an appeal of the state-court judgment." Id.

"Even against the parties to a state-court judgment, <u>Rooker-Feldman</u> only applies when the injury alleged by the plaintiffs was caused by the state-court judgment."  <u>Id.</u> at 1237 (internal quotations omitted).  The Supreme Court of the United States explained in <u>Exxon Mobil Corp. v. Saudi Basic Industries Corp.</u>, 544 U.S. 280 (2005):

> The <u>Rooker-Feldman</u> doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.  <u>Rooker-Feldman</u> does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

<u>Id.</u> at 284.

## NEW MEXICO LAW REGARDING
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The Supreme Court of New Mexico has adopted the Restatement (Second) of Torts' approach for intentional infliction of emotional distress.  <u>See</u> <u>Baldonado v. El Paso Natural Gas Co.</u>, 2008-NMSC-005, ¶ 26, 176 P.3d 277, 283.  The Restatement (Second) provides that intentional infliction of emotional distress exists when:

> [(i)] One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm  to the other results from it, for such bodily harm.

> [(ii)]  Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress

> (a)  to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or

> (b) to any other person who is present at the time, if such distress results in bodily harm.

Id. ¶ 26, 176 P.3d at 283 (quoting Restatement (Second) of Torts § 46).  The elements of intentional infliction of emotional distress are: "[(i)] the conduct in question was extreme and outrageous; [(ii)] the conduct of the defendant was intentional or in reckless disregard of the plaintiff; [(iii)] the plaintiff's mental distress was extreme and severe; [and (iv)] there is a causal connection between the defendant's conduct and the claimant's mental distress."  Baldonado v. El Paso Natural Gas Co., 2008-NMSC-005, ¶ 27, 176 P.3d at 283 (internal quotations omitted).  The Supreme Court of New Mexico interprets these elements as "merely restat[ing] the first prong of the Restatement test."  Baldonado v. El Paso Natural Gas Co., 2008-NMSC-005, ¶ 27, 176 P.3d at 283.  Most intentional infliction of emotional distress claims arise from a preexisting relationship between the plaintiff and the defendant -- such as employer/employee.  See id. ¶ 27, 176 P.3d at 283.

"Extreme and outrageous conduct is described as conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Silverman v. Progressive Broadcasting, Inc., 1998-NMCA-107, ¶ 32, 964 P.2d 61, 509 (internal quotations omitted).  Severe emotional distress means "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances."  Id. ¶ 33, 964 P.2d at 510 (internal quotations omitted).  "Improper treatment does not constitute severe emotional distress as contemplated under the tort."  Id. ¶ 33, 964 P.2d at 510.

## LAW REGARDING SUPPLEMENTAL JURISDICTION

It is a fundamental precept of American law that the federal courts are "courts of limited jurisdiction."  Exxon Mobil Corp. v.. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005).  Federal courts "possess only that power authorized by Constitution and statute."  Kokkonen v. Guardian Life

Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Among the powers that Congress has bestowed upon the federal courts is the power to hear controversies arising under federal law, federal-question jurisdiction,  and controversies arising between citizens of different states -- diversity jurisdiction. See 28 U.S.C. §§ 1331 and 1332.

Although a statutory basis is necessary for federal courts to exercise jurisdiction over a controversy, "it is well established -- in certain classes of cases -- that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. at 552.  The Supreme Court of the United States has long subscribed to the concept of supplemental jurisdiction recognized in two common-law doctrines -- pendent and ancillary jurisdiction.  Federal courts may exercise pendent jurisdiction over state-law claims when "state and federal claims . . . derive from a common nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).  Ancillary jurisdiction gives federal courts the flexibility to hear a cause of action even after the introduction of third parties whose insertion into the litigation is not supported by any independent grounds for federal jurisdiction, when those parties share a common interest in the outcome of the litigation and are logical participants in it.  See Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 375 n.18 (1978).

In 1988, Chief Justice William H. Rehnquist created the Federal Courts Study Committee to analyze the federal court system and to recommend reforms. See 16 Moore's Federal Practice § 106.04[5] (Matthew Bender 3d ed. 2007).  In response to the Committee's findings regarding "pendent" and "ancillary" jurisdiction, Congress codified the application of the two doctrines when it passed the Judicial Improvements Act of 1990:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  In enacting 28 U.S.C. § 1367, Congress conferred upon federal district courts "supplemental forms of jurisdiction . . . [that] enable them to take full advantage of the rules on claim and party joinder to deal economically -- in single rather than multiple litigation -- with matters arising from the same transaction or occurrence."  Report of the Federal Courts Study Committee, Part II.2.B.2.b. (April 2, 1990), reprinted in 22 Conn. L.Rev. 733, 787 (1990).

The United States Court of Appeals for the Tenth Circuit has followed the Supreme Court's lead in classifying supplemental jurisdiction not as a litigant's right, but as a matter of judicial discretion. See Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir.2004)(citing City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)).  In circumstances where the supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction. The traditional analysis, based on the Supreme Court's opinion in United Mine Workers v. Gibbs, compelled courts to consider "judicial economy, convenience and fairness to litigants" when deciding whether to exercise supplemental jurisdiction. 383 U.S. at 726.  Similarly, Congress' supplemental jurisdiction statute enumerates four factors that the court should consider:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  In applying these factors, district courts should seek to exercise supplemental jurisdiction in an effort to "vindicate values of economy, convenience, fairness, and comity." Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d at 1164.

Numerous courts have acknowledged that 28 U.S.C. § 1367(c) necessarily changed the district courts' supplemental jurisdiction discretion analysis, and that, unless one of the conditions of 28 U.S.C. § 1367(c) exists, courts are not free to decline jurisdiction.  See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 447 (2d Cir.1998)("Section 1367 has indeed altered Gibbs' discretionary analysis."); McLaurin v. Prater, 30 F.3d 982, 985 (8th Cir.1994)("The statute plainly allows the district court to reject jurisdiction over supplemental claims only in the four instances described therein."); Executive Software N. Am. v. U.S. Dist. Court, 24 F.3d 1545, 1557 (9th Cir.1994)("By codifying preexisting applications of Gibbs in subsections (c)(1)-(3), however, it is clear that Congress intended the exercise of discretion to be triggered by the court's identification of a factual predicate that corresponds to one of the section 1367(c) categories."); Palmer v. Hosp. Auth., 22 F.3d 1559, 1569 (11th Cir.1994)("[S]upplemental jurisdiction must be exercised in the absence of any of the four factors of section 1367(c).")(emphasis in original). At least one other district court in the Tenth Circuit has reached the same conclusion. See Gudenkauf v. Stauffer Commc'ns, Inc., 896 F.Supp. 1082, 1084 (D.Kan.1995)("[A]ny exercise of discretion declining jurisdiction over pendent claims or parties cannot occur until 'triggered' by the existence of one of the four conditions enumerated.").

## ANALYSIS

The Court will dismiss Jeffrey Bannister's federal claims for Coronado Finance's alleged

violation of his constitutional rights.  While the Rooker/Feldman doctrine does not bar Jeffrey Bannister's claims, at least in part, because Jeffrey Bannister was not a party to the state court action, Jeffrey Bannister does not sufficiently allege that Coronado Finance's conduct constitutes state action.  Because Jeffrey Bannister does not properly aver that Coronado Finance is a state actor, he does not state a claim that Coronado Finance violated his constitutional rights.  The Court will also dismiss Jeffrey Bannister's claim for intentional infliction of emotional distress for failure to state a claim.

I.      **THE ROOKER/FELDMAN DOCTRINE DOES NOT BAR JEFFREY BANNISTER'S CLAIMS AGAINST CORONADO FINANCE, INC.**

Jeffrey Bannister argues that the Rooker/Feldman doctrine should not bar his claim because he did not have a reasonable opportunity to raise his claims in the previous state court proceeding. See Response ¶ 5, 2-3.  Coronado Finance contends that Jeffrey Bannister cites no authority that excepts his claims from the Rooker-Feldman doctrine.  See Memo. at 9-12.  The state court judge denied Jeffrey Bannister's motion to intervene.  See Bradley Memo., Exhibit D, Order Denying "Motion to Intervene/to Dismiss Complaint to Foreclose Judgment Lien/and to Vacate Void Judgment" filed by Non-Party Jeff Bannister in Coronado Finance, Inc. v. Bannister, No. CV-2006-2218 (Third Judicial District, Doña Ana County, State of New Mexico).

Jeffrey Bannister was not a party to the state-court action, because the state court denied his motion to intervene.  Although he argued in state court, in his Motion to Intervene, that he did not personally contract with Coronado Finance, and that, therefore, its judgment lien against his sister in CV-2006-1347 "was obtained by fraud upon the Court and is null and void," he did not become a party.  Complaint, Exhibit 2, Motion to Intervene/to Dismiss Complaint to Foreclose Judgment Lien/and to Vacate Void Judgment, filed January 12, 2007 in Coronado Finance, Inc. v. Bannister,

No. CV-2006-2218 (Third Judicial District, Doña Ana County, State of New Mexico).  Because Jeffrey Bannister was not a party to the state court action, the Rooker-Feldman doctrine does not bar his federal lawsuit.  See Mo's Express, LLC v. Sopkin, 441 F.3d at 1236 (noting that, where the parties in the federal litigation were not parties in the state litigation, were not bound by the state court's judgment, and are neither predecessors nor successors in interest to the parties involved in the state litigation, the Rooker-Feldman doctrine is inapplicable to those parties).

This federal litigation is not parallel to the judgment in state court.  The state court judgment may, however, have preclusive effect.  In any case, the Supreme Court has instructed district courts that "Rooker-Feldman does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. at 284.  The Court will not dismiss Jeffrey Bannister's lawsuit on the basis of the Rooker-Feldman doctrine.

## II.   BECAUSE JEFFREY BANNISTER HAS NOT PLED FACTS THAT DEMONSTRATE CORONADO FINANCE'S CONDUCT CONSTITUTES STATE ACTION, JEFFREY BANNISTER HAS NOT STATED A CLAIM FOR CORONADO FINANCE'S ALLEGED VIOLATIONS OF HIS CONSTITUTIONAL RIGHTS.

To state a cause of action under 42 U.S.C. §§ 1983 and 1986 for alleged constitutional violations, the challenged conduct must constitute state action.  See Lugar v. Edmondson Oil Co., 457 U.S. at 935; Johnson v. Rodrigues (Orozco), 293 F.3d at 1202 (interpreting claim arising from alleged violation of the Fourteenth Amendment as a § 1983 claim and applying state action requirement to that claim); Fulton v. Emerson Elec. Co., 420 F.2d 527, 529-30 (5th Cir. 1969)(applying state action requirement to 42 U.S.C. § 1986 action).  Jeffrey Bannister brings two claims for alleged constitutional violations.  See Complaint at 5 (asserting claim under 42 U.S.C.

§ 1983)(Count I); id. at 6 (asserting claim under 42 U.S.C. § 1984)(Count II).[2]  Because Jeffrey

Bannister alleges that Coronado Finance acted under color of law to violate his constitutional rights,

Jeffrey Bannister must demonstrate that Coronado Finance's conduct constituted state action.

See id. at 5 (stating "[t]he Defendant . . . Coronado Finance[,] Inc[.] . . . did conspire with Judge

Valentine, a State actor, under color of law to deprive Plaintiff Jeff Bannister of his federally

protected rights."); id. at 6 (stating "[t]he Defendant . . . Coronado Finance[,] Inc. . . . conspired .

. . to deprive Plaintiff of his constitutional rights to the equal protection of the laws.").  Although

Jeffrey Bannister alleges a claim under 42 U.S.C. § 1984, because Jeffrey Bannister is proceeding

pro se, the Court interprets this claim as attempting to state a claim under 42 U.S.C. § 1986 for

alleged violation of the Fourteenth Amendment, in conspiring to deprive Jeffrey Bannister of equal

protection of the laws.  Jeffrey Bannister does not, however, demonstrate that Coronado Finance's

conduct constituted state action.

## A.    CORONADO FINANCE'S CONDUCT IS NOT STATE ACTION UNDER THE PRIVATE-FUNCTION TEST.

Coronado Finance did not exercise powers "traditionally reserved to the State" in obtaining

a lien on the property in question for money it lent to Jeffrey Bannister's sister.  Jackson v. Metro.

Edison Co., 419 U.S. at 352.  In Barrios-Velasquez v. Asociacion de Empleados Del Estado Libre

Asociado de Puerto Rico, 84 F.3d 487 (1st Cir. 1996), the United States Court of Appeals for the

---

[2]  The Court notes that 42 U.S.C. § 1984 is "omitted" and was formerly classified to Section 46 of Title 8, Aliens and Nationality, related to Supreme Court review of cases arising under Act Mar. 1, 1875. Sections 1 and 2 of Act Mar. 1, 1875 were declared unconstitutional in United States v. Singleton, 109 U.S. 3 (1883), and sections 3 and 4 of that Act were repealed by Act June 25, 1948, c. 645, § 21, 62 Stat. 862.  Because 42 U.S.C. § 1984 no longer exists, the Court need not address the requirements under that provision.  See Estate of Curtis v. City of New Orleans, Nos. Civ.A. 98-3733, Civ.A. 99-0959, 2000 WL 557399 at * 2 (stating, "[f]urther, 42 U.S.C. § 1984 no longer exists.").

First Circuit explained that providing loans, insurance, and medical services are not "the exclusive province of the State, since banks, credit unions, savings and loan associations, brokerage firms, mutual funds, and insurance companies have existed to promote savings, loans and health and other insurance." Id. at 494. Because lending money is not a power exclusive to the State, Coronado Finance's conduct is not state action under the private-functions test. See Johnson v. Rodrigues (Orozco), 293 F.3d at 1203 (explaining that, "[w]hile many functions have been traditionally performed by governments, very few have been exclusively reserved to the State.")(internal quotations omitted).

**B.    CORONADO FINANCE'S CONDUCT IS NOT STATE ACTION UNDER THE NEXUS TEST.**

Jeffrey Bannister has not demonstrated that Coronado Finance had a sufficiently close nexus to the State such that its conduct "may be fairly treated as that of the state itself." Jackson v. Metro. Edison Co., 419 U.S. at 351. Although Jeffrey Bannister asserts that Coronado Finance and "Judge Valentine, a State actor, under color of law . . . deprive[d] [him] of his federally protected rights," Complaint at 5, Jeffrey Bannister does not contend that the state, through Judge Valentine, "exercised coercive power or has provided significant encouragement, either overt or covert" to Coronado Finance. Blum v. Yaretsky, 457 U.S. at 1004. Jeffrey Bannister has not demonstrated a nexus between Coronado Finance's conduct and the state itself, such that Coronado Finance's conduct would be considered state action.

**C.    CORONADO FINANCE'S CONDUCT IS NOT STATE ACTION UNDER THE JOINT-ACTION TEST.**

Coronado Finance contends that "[t]he United States Supreme Court decisions make clear that the 'joint participation' test is not satisfied when a private citizen does no . . . more than invoke

a presumptively valid judicial process in pursuit of legitimate private ends."  Motion at 7 (citing
Lugar v. Edmondson Oil Co., Inc., 457 U.S. at 946-47).  See Lugar v. Edmondson Oil Co., Inc., 457
U.S. at 946-47 (explaining that a private citizen whose only action was to invoke a presumptively
valid state attachment process has not acted under color of state law in causing the State to deprive
petitioner  of alleged constitutional rights).  Because Jeffrey Bannister has not demonstrated that
Coronado Finance did anything beyond "invoking a presumptively valid state process,"  Lugar v.
Edmondson Oil Co., Inc., 457 U.S. at 946, Jeffrey Bannister does not demonstrate that Coronado
Finance and the state "acted in concert in effecting a particular deprivation of [his] constitutional
rights."  Gallagher v. Neil Young Freedom Concert, 49 F.3d at 1453.  Coronado Finance's conduct
is thus not state action under the joint-action test.

### D.   CORONADO FINANCE'S CONDUCT IS NOT STATE ACTION UNDER THE SYMBIOTIC-RELATIONSHIP TEST.

Jeffrey Bannister also does not demonstrate that Coronado Finance and the state are in an
interdependent, symbiotic relationship.  See Burton v. Wilmington Parking Authority, 365 U.S. at
862.  Judge Valentine's actions were state action within the meaning of the Fourteenth Amendment.
See Shelley v. Kraemer, 334 U.S. at 14 (stating "the action of state courts and of judicial officers
in their official capacities is to be regarded as action of the State within the meaning of the
Fourteenth Amendment.").  Jeffrey Bannister's conclusory accusations of joint action between
Coronado Finance and Judge Valentine, however, are insufficient to demonstrate state action on the
part of Coronado Finance.  See Fries v. Helsper, 146 F.3d at 458 (noting that "conclusory allegations
that the defendant conspired with the Judge . . . and influenced his decisions . . .  do not demonstrate
that the defendants acted under color of state law and are not sufficient to survive a motion to
dismiss.").  Jeffrey Bannister has not demonstrated that the state has "so far insinuated itself in a

position of interdependence" with Coronado Finance that "[the state] must be recognized as a joint

participant in the challenged activity."  Burton v. Wilmington Parking Authority, 365 U.S. at 862.


Because Jeffrey Bannister has not demonstrated that Coronado Finance's conduct was state

action under any of the Supreme Court's tests, dismissal of his federal claims for Coronado

Finance's alleged violation of his constitutional rights is appropriate.  Jeffrey Bannister has not

shown, and it is unlikely that he can show  that (i) he has been deprived of a right protected by the

Constitution or laws of the United States; and (ii) that the putative state actor deprived him of the

constitutional right while acting under color of any statute.  See Flagg Bros., Inc. v. Brooks, 436

U.S. at 156.

## III.    JEFFREY BANNISTER FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

In his Complaint, Jeffrey Bannister asserts:

The conduct of the Defendants mentioned herein has cost Plaintiff a total of
$200.000.00 in inheritance property, and a total of $150.000.00 in i[m]provements
on the land, and caused Plaintiff a great deal of emotional distress.  Plaintiff is
entitled to the same equal protections of the law as any other citizen of the United
States, and because he was denied his rights by the Defendants['] misconduct, they
are most certainly liable to the Plaintiff Jeff Bannister for his suffering.

Complaint at 7.  To state a claim for intentional infliction of emotional distress, under New Mexico

law, Jeffrey Bannister must assert that Coronado Finance "by extreme and outrageous conduct

intentionally or recklessly cause[d] severe emotional distress to [him and] is subject to liability for

such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

Baldonado v. El Paso Natural Gas Co., 2008-NMSC-005, ¶ 26, 176 P.3d at 283.  Jeffrey Bannister

may also state a claim for intentional infliction of emotional distress by stating the elements of that

-30-

tort: "[(i)] the conduct in question was extreme and outrageous; [(ii)] the conduct of [Coronado Finance] was intentional or in reckless disregard of the plaintiff; [(iii)] [Jeffrey Bannister]'s mental distress was extreme and severe; [(iv)] there is a causal connection between [Coronado Finance]'s conduct and [Jeffrey Bannister]'s mental distress." Baldonado v. El Paso Natural Gas Co., 2008-NMSC-005, ¶ 27, 176 P.3d at 283 (internal quotations omitted).

As noted by the Court of Appeals of the State of New Mexico, "[i]mproper treatment does not constitute severe emotional distress as contemplated under the tort." Silverman v. Progressive Broadcasting, Inc., 1998-NMCA-107, ¶ 33, 964 P.2d at 510.  While he alleges that he has endured a "great deal" of emotional distress, he does not allege that the distress has been extreme or severe. Moreover, even if the Court were to find Coronado Finance's tactics and interest rates to be hardball and high, they are legal, and the Court is reluctant to displace the New Mexico legislature's decision to allow such lending practices by labeling them "extreme and outrageous" and subject to tort liability.

Jeffrey Bannister has not "'nudge[d] his claim . . .  across the line from conceivable to plausible' in order to survive a motion to dismiss." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1974)(alterations omitted).  Jeffrey Bannister has not given the Court any indication that amendment would not be futile.  The Court will, as Coronado Finance requests, dismiss Jeffrey Bannister's claim for intentional infliction of emotional distress without prejudice.

**IT IS ORDERED** that Defendant Coronado Finance, Inc.'s Motion to Dismiss is granted in part.  The plaintiff's federal claims are dismissed.  The Plaintiff's state law claim for emotional distress is dismissed without prejudice.

_____
UNITED STATES DISTRICT JUDGE

*Parties and Counsel:*

Jeffrey Bannister
Las Cruces, New Mexico

     *Plaintiff pro se*

Leonard J. Piazza
Mesilla, New Mexico

     *Attorney for Defendant Coronado Finance, Inc.*

Lawrence R. White
Miller Stratvert, P.A.
Las Cruces, New Mexico

     *Attorneys for Defendant Patricia Bradley*